|2WHIPPLE, Judge.
In this writ application, relators, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P. and Attorneys’ Liability Assurance Society, Inc., challenge the trial court’s denial of their motion to reassign this matter to the division of the Nineteenth Judicial District Court to which it was originally assigned and the rul *73 ing by the “Insurance Duty Judge” on their dilatory exception raising the objection of lack of procedural capacity. For the following reasons, we grant the writ.
FACTS AND PROCEDURAL HISTORY
By original and amended petitions, filed on May 21,1992 and August 19,1992 respectively, James Brown, as Commissioner of Insurance and Liquidator of Alliance Casualty & Reinsurance Company (“Alliance”), filed suit against Gerald Daigle, Jr.; the law firm of Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P. (“Chaffe McCall”), Daigle’s former employer; and Attorneys’ Liability Assurance Society, Inc., the professional liability insurer of Daigle and Chaffe McCall. The |3suit asserted legal malpractice and related claims against these defendants, arising out of work that Daigle had performed for Alliance.[1]
Upon filing, this matter was randomly allotted to Division “K” of the Nineteen Judicial District Court (“19th JDC”). Thereafter, retired Judge Paul B. Landry, Jr. was appointed by the Louisiana Supreme Court to sit pro tempore on the 19th JDC to preside over litigation involving Champion Insurance Company and litigation involving other unnamed insurance companies in liquidation. By ex parte motion of plaintiff, this matter was then reassigned to Judge Landry. Judge Landry was re-appointed over a period of time pursuant to orders of the Louisiana Supreme Court. Upon the expiration of Judge Landry’s appointment, the 19th JDC created the de facto position of “Insurance Duty Judge” to handle pretrial matters in cases, such as this one, related to failed insurance companies.
On June 2,1997, Robert Bourgeois filed an ex parte motion to be substituted for Commissioner Brown as the party plaintiff in each of these three consolidated cases and for leave of court to amend the captions accordingly. The court entered the order as prayed for by Bourgeois, who then filed an amended petition. After service of the amended pleadings, relators filed a dilatory exception of lack of procedural capacity, contesting Bourgeois’ capacity to act as Liquidator and to prosecute this lawsuit.
The exception was scheduled by the court for hearing before the designated Insurance Duty Judge. Prior to the scheduled hearing, relators filed a motion to reassign this matter to Division “K,” the division to which the case had been originally assigned by random allotment. The motion to reassign was denied with oral reasons by the “Insurance Duty Judge,” who stated as follows:
14The judges of the 19th Judicial District established the Insurance Duty Judge so these cases would have consistent rulings and would not burden the judges of the various divisions with matters which required a certain amount of background knowledge and the operation of the Louisiana Receivership Office and the Office of the Commissioner of Insurance. Therefore, preliminary matters including exceptions and motions are handled by the duty judge.
Thus, by judgment dated September 18, 1997, the duty judge denied relators’ motion for reassignment and exception of lack of procedural capacity.
Relators filed an application for supervisory writs of review and certiorari, challenging the denial of their motion to reassign and exception of lack of procedural capacity. On December 12, 1997, a panel of this court denied the writ application. Relators then filed a writ application with the Supreme Court. On March 20, 1998, the Supreme Court granted the writ application and remanded the matter to this court for briefing, argument and a full opinion by the Court of Appeal.
DISCUSSION
Relators contend that the actions of the 19th JDC in creating an “Insurance Duty Judge” to handle all pretrial matters in all cases related to failed insurance companies and in reassigning every case involving insolvent insurers placed in rehabilitation or liqui *74 dation violate LSA-C.C.P. arts. 25B.1 and 253.2, and the Louisiana Supreme Court’s dictates in State of Louisiana v. Sprint Communications Company, L.P., 96-3094 (La.9/9/97); 699 So.2d 1058. Thus, relators assert that the trial court erred in denying their motion to reassign the hearing on their dilatory exception of lack of procedural capacity from the Insurance Duty Judge to the division of the 19th JDC to which the case was originally allotted, and in going forward to decide the dilatory exception of lack of procedural capacity on September 2, 1997. We agree.
Louisiana Code of Civil Procedure article 253.1, effective August 15, 1995, provides as follows:
15AH pleadings filed shall be randomly assigned to a particular section or division of the court by either of the following methods:
(1) By drawing indiscriminately from a pool containing designations of all sections or divisions of court in the particular jurisdiction in which the ease is filed.
(2) By use of a properly programmed electronic device or computer programmed to randomly assign cases to any one of the sections or divisions of court in the particular jurisdiction in which the case is filed.
In Sprint, the Louisiana Supreme Court analyzed LSA-C.C.P. art. 253.1 to determine whether the Eighteenth Judicial District Court’s non-random interdivisional transfer of lawsuits for “judicial economy and case management” was improper. In concluding that the transfers were impermissible, the Court stated that the article expressed “the legislative mandate to end the practice of non-random assignment.” Sprint Communications Company, 96-3094 at p. 3; 699 So.2d at 1062. The Court further articulated:
The statute is clear and unambiguous. The requirement to randomly assign must apply to the transfer as well as the initial allotment of cases to deter attempts to manipulate the assignment of lawsuits.... Judges cannot decide to accept or reject cases unless a valid reason for recusation exists. The words “random assignment” necessitate the statute’s application beyond the initial procedures employed by the clerk of court. When clear and unambiguous, laws are-to be interpreted and applied as written. La. Civ.Code art. 9. If a case is transferred to another judge shortly after being randomly assigned, then it was not truly randomly assigned. To do so would defeat the purpose of the statute and render it meaningless.
* * ^ sj: *
We hold transfers that permit judges to circumvent the random allotment process to funnel particular types of cases to one judge violate the spirit and purpose of La.Code Civ. Proc. art. 253.1.
Sprint Communications Company, 96-3094 at pp. 3-4; 699 So.2d at 1062.
The Court also concluded that non-random interdivisional transfers violate public policy, stating as follows:
Furthermore, random assignment procedures promote fairness and impartiality and reduce the dangers of favoritism and bias. Unless a valid ground for recusal exists, every elected judge of a district court is authorized to hear any case randomly assigned to him or her within |6the court’s jurisdiction, regardless of the type of case. No single judge sitting in a district court has the right or prerogative to try class action suits, maritime cases, medical malpractice claims, or any other particular type of litigation to the exclusion of other judges on the same court to whom the cases are randomly assigned. Random assignment becomes meaningless if judges can routinely transfer cases between themselves on a non-random basis. Ex parte non-random transfers allow plaintiffs or defendants to pick the division of their choice, an act which we hold is barred by the aforementioned statute, local rule and public policy.
Sprint Communications Company, 96-3094 at p. 5; 699 So.2d at 1063 (emphasis added) (footnote omitted).
The Court also noted the enactment of LSA-C.C.P. art. 253.2, effective August 15, 1997, which provides as follows:
After a case has been assigned to a particular section or division of the court, *75 it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561. However, the supreme court by rule, may establish uniform procedures for reassigning cases under circumstances where an expeditious disposition of cases may be effectuated.
The Court found that the clear language of LSA-C.C.P. art. 253.2 left no doubt that the non-random interdivisional transfers at issue therein would be improper under this new article. Thus, the Court concluded that its decision was codified by the recent enactment of LSA-C.C.P. art. 253.2.[2]
Plaintiff contends that the dictates of Sprint are inapplicable herein because: (1) the Insurance Duty Judge position in the 19th JDC was originated by order of the Louisiana Supreme Court; (2) the Insurance Duty Judge procedure is not one of case reassignment between divisions, but rather of “referral of administrative and pretrial issues” for administrative reasons, leaving trial on the merits to be held Rbefore the randomly allotted division judges; and (3) relators acquiesced in the Insurance Duty Judge procedure for more than five years without raising any objection.
In support of plaintiffs first argument, plaintiff notes that LSA-C.C.P. art. 253.2 permits the transfer of a case from one division to another where the Supreme Court adopts a rule establishing “uniform procedures for reassigning cases under circumstances where an expeditious disposition of cases may be effectuated.” Plaintiff argues that this exception to the rule disallowing non-random transfers is applicable herein because the Insurance Duty Judge position under which the 19th JDC administers insurance liquidations was originated by the Supreme Court in 1992, with the pro tempore appointment of Judge Landry.
The Supreme Court appointed Judge Landry to act as judge pro tempore for the 19th JDC through four separate orders, covering the time period of December 8,1992, through June 30, 1994. Pursuant to the orders appointing him, Judge Landry was “to preside over those cases arising out of claims against Champion Insurance Company and Fidelity Fire and Casualty Insurance Company; and, to preside over other matters and litigation relating to various insurance companies placed in liquidation, conservation or other regulatory status.” Thus, this matter was appropriately transferred to Judge Landry during the term of his appointment pursuant to these orders.
However, upon the expiration of Judge Landry’s appointment, the 19th JDC, not the Supreme Court, created the position of Insurance Duty Judge. The expired orders through which the Supreme Court appointed Judge Landry made no provision for anything other than a temporary appointment. We, therefore, conclude that these orders appointing a judge to sit pro tempore, to handle insurance-related matters for a limited time, the last of which expired on June 30, 1994, did not constitute a rule of the Supreme Court allowing the 19th JDC to Igestablish an Insurance Duty Judge after the date of expiration of the last order. Thus, the creation by the 19th JDC of the position of Insurance Duty Judge subsequent to the expiration of the orders appointing Judge Landry and the transfer of this matter to Judge McDonald, as Insurance Duty Judge, is not a valid exception to the general rule prohibiting non-random assignment.[3]
*76 Plaintiffs second argument in support of his contention that Sprint is inapplicable herein, i.e., the Insurance Duty Judge procedure is a procedure for “referral of administrative and pretrial issues” rather than a total case reassignment between divisions, is likewise without merit. Plaintiff argues that, unlike the case-swapping in Sprint, the 19th JDC’s Insurance Duty Judge system reserves to the randomly-allocated division judges the responsibility for trials on the merits. Thus, plaintiff contends that the practices frowned upon in Sprint Communications Company are not encouraged by this procedure.
In the recent case of 730 Bienville Partners, Inc. v. Seiler, 97-2835 (La.App. 4th Cir. 12/19/97); 703 So.2d 1386, writ denied, 98-0172 (La.2/20/98); 709 So.2d 787, the Fourth Circuit Court of Appeal addressed the applicability of LSA-C.C.P. arts. 253.1 and 253.2 and the dictates of Sprint to a local rule of a district court providing for the position of “duty judge” to handle all emergency matters, such as TROs and preliminary injunctions.
The Court concluded that, although this local rule did not effect a complete transfer of the case from one section to another, unlike the situation in Sprint, the | ¡¡reasoning employed by the Supreme Court in Sprint was equally applicable to the facts and circumstances presented therein. 730 Bienville Partners, Inc., 97-2835 at p. 4; 703 So.2d at 1388. The court noted that the “Duty Judge Schedule” was printed for an entire calendar year, thereby allowing a party to choose the judge who would hear his or her request for emergency relief in circumvention of the requirements for random assignment. 730 Bienville Partners, Inc., 97-2835 at pp. 4-5; 703 So.2d at 1388. Thus, the court concluded that the local rule which provided that the “duty judge” would hear emergency matters rather than the judge of the division to which the particular case had been randomly allotted violated the provisions of LSA-C.C.P. arts. 253.1 and 253.2, as interpreted by the Supreme Court in Sprint. 730 Bienville Partners, Inc., 97-2835 at pp. 4-5; 703 So.2d at 1388-1389.
We likewise conclude that, while the Insurance Duty Judge procedure adopted by the 19th JDC may not result in a complete transfer of a case from one division to another (in that it reserves responsibility for trial on the merits to the judge to whom the matter was originally allotted), the rationale of Sprint nonetheless applies. In Sprint, the Supreme Court specifically disapproved of the practice of funneling a particular type of litigation to one single judge to the exclusion of the other judges on the same court, calling such a practice “inappropriate and impermissible.” Sprint Communications Company, 96-3094 at pp. 5, 6; 699 So.2d at 1063. The reserving of trial on the merits to the originally assigned judge, while allowing a different judge, designated as the “duty judge,” to handle most other matters in a particular ease, does not advance the fairness and impartiality or reduce the dangers of favoritism and bias that random allotment procedures are designed to promote. See Sprint Communications Company, 96-3094 at p. 5; 699 So.2d at 1063.
| ipAdditionally, while the creation of the Insurance Duty Judge procedure by the 19th JDC to handle “administrative and pretrial issues” may have been an attempt to “expedite, simpl[if]y, and control the process of insurance company liquidation” and to “efficiently administer” insurance insolvency cases, as argued by plaintiff, such considerations of judicial economy and ease management have been rejected by the Supreme Court as a valid reason for non-random assignment or transfer. Sprint Communications Company, 96-3094 at p. 3; 699 So.2d at 1061.
We turn now to plaintiffs third contention. Plaintiff contends that relators acquiesced in the Insurance Duty Judge procedure for more than five years without raising any objection, thereby waiving any right to object. Plaintiff notes that relators never objected to the initial transfer of this matter to Judge Landry and that two years passed after the enactment of LSA-C.C.P. art. 253.1 *77 before relators first objected to the duty-judge procedure. In support of the argument that relators have waived their right to object, plaintiff relies upon the case of Roby v. Leonard, 209 So.2d 182 (La.App. 1st Cir.1968).
In Roby, this court held that a party had waived any objection to an informal transfer of his case from one division to another, because the party had failed to object when the transfer was made, but waited to object after exceptions had been heard in the new division. Roby, 209 So.2d at 183. However, we find Roby to be factually distinguishable and, therefore, not controlling.
In the instant case, relators do not challenge the transfer of this matter to Judge Landry during the period that he served as judge pro tempore by order of the Supreme Court, a term which expired on June 30, 1994. Additionally, following the expiration of Judge Landry’s appointment, the judges of the 19th JDC did not vote to establish an Insurance Duty Judge position until November 2, 1994, and did not actually enter an order setting forth the duties of the Insurance Duty Judge until InApril 3, 1995. Moreover, the appointment of the judge herein as Insurance Duty Judge by the 19th JDC did not become effective until January 1,1997.
Neither the order adopted by the 19th JDC which set forth the duties of the Insurance Duty Judge nor any notice that this particular judge had been selected to fill this position was filed into the record in this matter. The record is also void of any formal order transferring this matter to the judge as Insurance Duty Judge. Furthermore, there is no evidence of record to indicate that the parties involved in this suit were ever given any type of formal notice of the transfer. Thus, we are unable to find a waiver occurred herein.
We further note that from the time of the expiration of Judge Landry’s appointment on June 30, 1994, until relators filed their motion to reassign on August 28, 1997, the parties appeared before the court on only one occasion, on May 16, 1997, which was only three months before the motion to reassign was filed.
Additionally, relators filed their exception of lack of procedural capacity on August 15, 1997, and by order dated August 21, 1997, the duty judge set the exception for hearing. Thus, relators filed their motion to reassign to the originally allotted division within one week of the judge’s order setting the exception for hearing. Under these facts, we cannot conclude that relators acquiesced in the transfer of this matter to the judge as “Insurance Duty Judge.”
We find no merit in plaintiffs arguments that Sprint is not controlling herein. We hold that the transfer of this matter to the particular judge as Insurance Duty Judge from the division to which it had been originally, and randomly allotted violates the provisions of LSA-C.C.P. art. 253.1 and the dictates of Sprint. Therefore, the transfer cannot stand. Sprint Communications Company, 96-3094 at p. 3; 699 So.2d at 1061. Accordingly, the judge’s subsequent ruling on relators’ [^exception of lack of procedural capacity must be vacated. See Prestridge v. Town of Carencro, 534 So.2d 133, 137 (La.App. 3rd Cir.1988).
CONCLUSION
For the above and foregoing reasons, the trial court’s judgment of September 2, 1997, denying relators’ motion to reassign is reversed. The September 18, 1997 judgment denying relators’ exception of lack of procedural capacity is vacated. It is hereby ordered that this matter proceed before Division “K” of the 19th Judicial District Court for the Parish of East Baton Rouge.
WRIT OF CERTIORARI GRANTED; SEPTEMBER 2, 1997 JUDGMENT ON MOTION TO REASSIGN REVERSED; SEPTEMBER 18, 1997 JUDGMENT ON EXCEPTION OF LACK OF PROCEDURAL CAPACITY VACATED; REMANDED FOR FURTHER PROCEEDINGS BEFORE DIVISION “K” OF THE 19TH JUDICIAL DISTRICT COURT.

. At some point in the proceedings, this matter, which bears suit number 381,310, was consolidated with suit numbers 385,816 and 387,386.

. Because the Court had concluded that the transfers at issue therein violated LSA-C.C.P. art. 253.1, which had been enacted prior to the transfers, it did not determine the retroactivity of subsequently enacted LSA-C.C.P. article 253.2. Sprint Communications Company, 96-3094 at p. 6; 699 So.2d at 1064.

. We note that LSA-C.C.P. art. 253.2 was not in effect at the time of the creation of the Insurance Duty Judge position or the appointment of the judge herein to that position. Moreover, because there is no formal order of transfer of record, it is unclear whether this matter was transferred to him prior to the effective date of this article. Accordingly, it is also unclear whether LSA-C.C.P. art. 253.2 applies herein, absent retroactive application.
However, because we conclude that the transfer of this matter to the duty judge at some point after his appointment as Insurance Duty Judge on January 1, 1997 violated LSA-C.C.P. art. 253.1 and because there was no valid Supreme Court rule or order, as contemplated by article *76 253.2, in effect at the times relevant herein, we do not address the retroactivity of article 253.2. See Sprint Communications Company, 96-3094 at p. 6; 699 So.2d at 1064.